FILED

# United States District Court
# Northern District of Alabama
# Southern Division

03 JUN -4 PM 1: 35

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| **Peggy Horn,** | ] | |
| Plaintiff(s), | ] | |
| vs. | ] | CV-01-CO-2614-S |
| **Jefferson County Commission,** | ] | |
| Defendant(s). | ] | |

ENTERED
JUN 0 4 2003

## Memorandum of Opinion

### I. Introduction.

Presently before the court is a motion for summary judgment, filed by the defendant, the Jefferson County Commission ("the County") on October 21, 2002. [Doc. #45.][1] The plaintiff, Peggy Horn ("Ms. Horn"), alleges that she was not promoted to the position of Occupational Nurse Coordinator for the Jefferson County Commission Risk Management Department by the County on account of her race and her use of unpaid leave under the Family and Medical Leave Act ("FMLA"). Ms. Horn brings claims against the County alleging racial discrimination under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17, and 42 U.S.C. § 1983, as well as claims for retaliation under the FMLA, 29 U.S.C. §§ 2601–2654.[2] The issues raised in the motion for summary judgment have been

---

[1] Ms. Horn originally brought claims against the Jefferson County Personnel Board ("Personnel Board") as well. However, those claims were voluntarily dismissed by the plaintiff on January 2, 2003. [Doc. ## 58-59.]

[2] The plaintiff originally asserted additional claims for retaliation under Title VII. Those claims were voluntarily dismissed by Ms. Horn on September 12, 2002. [Doc. ## 38, 40.]



fully briefed by both parties and are now ripe for decision. Upon due consideration, the court is of the opinion that the motion is due to be granted in part and denied in part.

## II. Facts.[3]

Ms. Horn, an African-American female, was at all times relevant to this lawsuit employed by the County as an Occupational Health Nurse. As background, pursuant to Act 248 of the Alabama Legislature of 1945, the County is subject to a Merit System, which is administered by the Personnel Board, a separate, legal entity. The Personnel Board has adopted rules and regulations which require that vacancies in positions classified as "merit positions" be filled from a list of eligible candidates prepared by the Personnel Board and furnished to the County. When there is no certified list of candidates available for a vacant merit position, the County may make a provisional appointment.

As further background, the County requires its employees to use their accumulated vacation and sick leave, which are paid leave, before being allowed to take a leave without pay. County employees accrue paid vacation and sick leave based on the number of years they have worked for the County. Ms. Horn took three extended leaves of absence for maternity related reasons in 1992, 1997, and 1999. The leaves in 1992 and 1997 were approved as unpaid leaves of absence; however, it appears to the court that the leave of

---

[3] The facts set out below are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

absence in 1999 was a paid leave of absence.[4] She received warnings and reprimands for her attendance and tardiness on February 2, 1998, March 14, 2000, March 21, 2000, March 30, 2000, May 8, 2000, May 9, 2000, May 11, 2000, May 17, 2000, June 5, 2000, June 9, 2000, July 12, 2000, and September 15, 2000. (Doc. # 47, Ex. E-G, J, W-Y.)[5]

The County employs an Occupational Health Nurse Coordinator ("Nurse Coordinator"), whose job duties include supervising four Occupational Health Nurses. The job requirements for that position include both educational and supervisory experience; the Nurse Coordinator must have an A.S. or B.S. degree, at least four years of Occupational Health Nurse experience, and prior supervisory experience. Ms. Horn, who has obtained an A.S. in Nursing and a B.S. in Allied Health, began her employment with the County on April 26, 1982. In 1988, Ms. Horn served as the provisional Nurse Coordinator for approximately six months, during which time she performed all the duties and responsibilities of that position. Leigh Anne Salmon ("Ms. Salmon"), a white female, was hired by the county as an Occupational Health Nurse on May 28, 1998. Ms. Salmon has a

---

[4] The parties disagree as to how to classify the 1999 leave of absence. The County claims that the maternity leave was taken pursuant to Ms. Horn's allowable unpaid leave, which it asserts was not considered in making the decision of whether to promote her. However, the plaintiff asserts that although she requested that her 1999 maternity leave be considered as unpaid and/or FMLA leave, the County required her to first exhaust her paid sick leave pursuant to its usual policy regarding unpaid leave. While the County has submitted the form upon which Ms. Horn requested that her 1999 maternity leave be unpaid FMLA leave, there is no evidence that Ms. Horn was actually granted unpaid leave in 1999. Therefore, viewing the evidence in the light most favorable to the plaintiff, the court concludes that Ms. Horn was not permitted to use unpaid leave for her maternity related absence in 1999 pursuant to the County's policy, and that her 1999 maternity leave was therefore a paid leave of absence.

[5] The County has submitted two documents purporting to summarize Ms. Horn's use of paid sick leave during the years 1995 to 2000. (Doc. #47, Ex. T.) The plaintiff has requested that the court strike these documents because there is no affidavit stating where the information summarized came from, nor is there an indication of who prepared the documents. The court agrees with the plaintiff and Exhibit T of the County's Evidentiary Submission will be stricken.

B.S. in Nursing, and while she had not been an Occupational Health Nurse prior to working for the County, she had four years of experience in case management, which the County's Risk Manager, Roy Burnett ("Mr. Burnett") testified was "equal to or better than occupational health." (Burnett Dep. at 21.) Furthermore, Ms. Salmon had substantial supervisory experience prior to coming to work for the County, including supervising entire shifts of nurses at the University of Alabama at Birmingham Hospital Emergency Room and hundreds of nurses and their assistants at Augmentation, Inc. (Burnett Aff. at 3-4.)

On August 19, 2000, the County's then Nurse Coordinator resigned. Although Ms. Horn requested that she be considered for provisional appointment, Mr. Burnett recommended, and the Personnel Board approved, the provisional appointment of Ms. Salmon to the position. Mr. Burnett told Ms. Horn that he did not consider her because of her absences from work, stating that the County needed a Nurse Coordinator who could be counted on to be at work.

On December 18, 2000, the Personnel Board provided the County with a certified list of eligible candidates to permanently fill the Nurse Coordinator Position. That list contained three names: Ms. Salmon, Ms. Horn, and Linda Butler. Ms. Horn testified that she was told by Gregory James ("Mr. James"), the Manager of the Employment and Administration Division of the Personnel Board, that she was ranked first on the list, meaning she was the most qualified of the three individuals on the list.[6] Mr. Burnett interviewed all three qualified applicants in January 2001. On January 13, 2001, Mr. Burnett recommended and the

---

[6] Mr. James denies having told Ms. Horn this information. (James Dep. at 22-23.) For purposes of summary judgment, the court assumes that Mr. James told Ms. Horn that she was the most qualified person for the Nurse Coordinator Position.

President of the County Commission approved the permanent appointment of Ms. Salmon to the Nurse Coordinator position. The County admits that it considered Ms. Horn's use, which the County characterizes as abuse, of paid sick leave, in addition to other factors, when it decided to promote Ms. Salmon, rather than Ms. Horn.

### III.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual

dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

### IV. Discussion.

#### A. The Title VII and § 1983 failure to promote claims.

Ms. Horn asserts that the County failed to promote her on account of her race in violation of Title VII of the Civil Rights Act of 1964. Because it is a state actor, she also brings a claim against the County under § 1983 for violation of her constitutional right to equal protection of the laws. Because Ms. Horn's claims under § 1983 and Title VII generally have the same elements of proof and use the same analytical framework, the court will discuss them together.

Because the plaintiff has presented no direct evidence of discrimination, her claims must be analyzed using the familiar *McDonnell-Douglas* burden shifting framework. The plaintiff has the burden of establishing a prima facie case of race discrimination, and the County concedes that Ms. Horn has met that burden. The burden therefore shifts to the defendant to articulate a legitimate, non-discriminatory reason for failing to promote Ms. Horn. *Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000). If the employer meets this burden of production, the plaintiff must establish that the defendant's proffered reasons for the employee's rejection were pretextual. *Lee*, 226 F.3d at 1253.

The County has articulated the following reasons for failing to promote Ms. Horn: (1) Ms. Salmon had substantial supervisory experience with prior employers whereas Ms. Horn

had no substantial supervisory experience; (2) Ms. Horn had a poor leave and attendance record with respect to her paid leave which had resulted in frequent complaints from other County departments that she was not at work and not available to those departments; (3) Ms. Horn did not perform as well as Ms. Salmon in the interview for the permanent position; (4) Ms. Salmon had been performing the Nurse Coordinator job on a provisional basis in an outstanding manner for several months before she was permanently promoted; and (5) Ms. Salmon had performed the duties of Occupational Health Nurse in an outstanding manner since May 1998, and had no leave and attendance problem. The court is of the opinion that the County has satisfied its burden by articulating these reasons for failing to promote Ms. Horn. Therefore, Ms. Horn must prove that the articulated reasons are mere pretext for race discrimination.

"In a failure to promote case, a plaintiff cannot prove pretext by simply showing that she was better qualified than the individual who received the position that she wanted." *Lee*, 226 F.3d at 1253. Ms. Horn must prove that she was "clearly more qualified than" Ms. Salmon such that the disparities between their qualifications "are so apparent as virtually to jump off the page and slap you in the face." *Id.* at 1254. In other words, for Ms. Horn to prevail at the summary judgment stage, she must establish that the disparities between her qualifications and Ms. Salmon's qualifications are "so great that a reasonable fact-finder could infer that [the County] did not believe [Ms. Salmon] to be better qualified." *Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268.

Given Ms. Salmon's extensive supervisory experience, the court concludes that no reasonable factfinder could conclude that the County did not believe Ms. Salmon to be

better qualified. While Ms. Horn's testimony that the Personnel Board ranked her most qualified for the position, combined with the fact that she had more experience as an Occupational Health Nurse than Ms. Salmon, *may* lead to the conclusion that Ms. Horn was as qualified as or more qualified than Ms. Salmon, the evidence does not establish that she was so clearly more qualified for the position than Ms. Salmon that a reasonable juror could infer discriminatory intent from the comparison. See *Lee*, 226 F.3d at 1255. "Quite simply, [Ms. Horn's] evidence does not rise to the level of proof that is required when an employee attempts to prove pretext by showing she was substantially more qualified than the person promoted." *Id.* Because Ms. Horn has failed to produce evidence from which a reasonable factfinder could find that the County's proffered reasons for failing to promote her are mere pretext for race discrimination, summary judgment as to this claim is due to be granted.

**B.     The FMLA claim.**

The FMLA entitles an eligible employee to take up to twelve weeks of leave in a twelve-month period for the birth or adoption of a child, or the "serious health condition" of the employee or the employee's child, spouse, or parent. 29 U.S.C. § 2612. To protect this right, the FMLA prohibits an employer from retaliating against an employee who has exercised or attempted to exercise any rights under the statute. *Smith v. Bellsouth Telecommunications, Inc.*, 273 F.3d 1303, 1313-14 (11th Cir. 2001). Thus, if Ms. Horn can prove that her past use of FMLA leave was a motivating factor in the County's failure to promote her, she will have established a claim for relief under the FMLA.

To establish a case of retaliation under the FMLA, Ms. Horn must show that she engaged in statutorily protected conduct, she suffered adverse action, and there was a

causal connection between the protected conduct and the adverse action. *Smith*, 273 F.3d at 1314. The defendant admits that it considered Ms. Horn's use of paid sick leave when it denied her the promotion that was awarded to Ms. Salmon. While there is no dispute that much of Ms. Horn's paid sick leave would not qualify as leave to which Ms. Horn was entitled under the FMLA, the court must determine whether Ms. Horn's use of paid sick leave for her 1999 maternity related absence constitutes protected activity under the FMLA.[7] If the court finds, as a matter of law, that the paid maternity leave was protected under the FMLA, summary judgment is due to be denied, as the defendant has admitted it considered the use of paid leave in its decision not to promote Ms. Horn.

The court's decision as to how to treat Ms. Horn's 1999 paid maternity leave is guided by the Eleventh Circuit's decision in *Strickland v. Water Works & Sewer Bd. of the City of Birmingham*, 239 F.3d 1199 (11th Cir. 2001). In *Strickland*, the employer required employees to use all of their paid sick leave, without the protection of the FMLA, before invoking the FMLA as a basis for taking leave. Any paid sick leave used for purposes that would be covered by the FMLA would be subtracted from the twelve available weeks of FMLA leave. *Strickland*, 239 F.3d at 1205 n.6.[8] The Eleventh Circuit noted that the district

---

[7] Although Ms. Horn has asserted that paid leave used to care for her sick children should qualify as FMLA leave, she provides no evidence to document whether the children suffered from serious illnesses, and if so, whether the County knew the reasons for the leave. Therefore, the court will consider only the 1999 pregnancy leave of absence in its discussion of whether Ms. Horn engaged in statutorily protected activity.

[8] The County points out that its policy regarding the use of leave differs somewhat from that of the employer in *Strickland*. While the employer in *Strickland* allowed employees to use FMLA leave only after they had exhausted their paid leave, and only to the extent that their paid sick leave amounted to fewer than twelve weeks of leave, the County requires employees to exhaust all of their paid sick leave before being permitted to use the full twelve weeks of FMLA leave to which they are entitled. As will be explained below, this is a distinction without a difference, for purposes of the analysis under the FMLA.

court in that case "misinterpreted the FMLA as permitting employers with paid sick leave policies to choose whether an employee's FMLA-qualifying absence will be either unpaid but protected by the Act, or paid but unprotected." *Id.* at 1204. The Eleventh Circuit stated that under the district court's analysis, "when an employee misses work for an illness that qualifies under both his employer's paid sick leave policy and the FMLA, his employer could elect to have his absence count as paid sick leave rather than FMLA leave and would then be free to discharge him without running afoul of the Act." *Id.* at 1205. The Eleventh Circuit rejected this approach, and held that while an employer can require an employee to use his accrued paid sick leave and FMLA leave concurrently when the employee's condition qualifies for both, an employer cannot deny an employee use of FMLA leave for an otherwise FMLA-qualifying condition merely because the employee has not used all of his accrued paid sick leave.

Ms. Horn's pregnancy leave in 1999 clearly qualified for the protection of the FMLA.[9] *See* 29 U.S.C. § 2612(a)(1)(A) ("[A]n eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of the birth of a son or a daughter of the employee and in order to care for such son or daughter."). The County could not lawfully deny her that protection by requiring her to exhaust her paid leave prior to accessing her statutorily provided FMLA leave. The time she took off for her 1999 maternity leave, as it qualified for the protection of the FMLA, could and should have been counted toward her twelve week statutory entitlement. Because the County has admitted

---

[9] The County has presented no evidence that Ms. Horn had already exhausted her twelve weeks of FMLA leave in the twelve month period preceding her request for maternity leave in 1999, nor has it presented evidence that Ms. Horn exhausted her FMLA leave in the twelve months after her request.

that it considered Ms. Horn's use of paid sick leave in making its decision not to promote her, and because the court concludes, on the evidence before it, that Ms. Horn's 1999 paid pregnancy leave was protected by the FMLA, the court is of the opinion that Ms. Horn has adduced sufficient evidence to enable a reasonable factfinder to conclude that she was retaliated against for exercising her rights under the FMLA. Therefore, summary judgment as to the FMLA claim is due to be denied.

**V.    Conclusion.**

The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this ___3rd___ of June, 2003.

                                          L. Scott Coogler
                                        United States District Judge